Jordan Dwight REEVES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–02–00224–CR.

Court of Appeals of Texas,
Dallas.

Aug. 4, 2003.

Rehearing Overruled Sept. 3, 2003.

Robert P. Abbott, Coppell, Russell Wilson, Law Office of Russell Wilson II, Dallas, for Appellee.

William T. (Bill) Hill, Jr., Katherine A. Drew, Assistant Criminal District Attorney, Dallas, for State.

Before Justices WRIGHT, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

A jury convicted Jordan Dwight Reeves of possession with intent to deliver cocaine in an amount of four grams or more but less than 200 grams. Also, the jury found appellant used or exhibited a deadly weapon during the commission of the offense. The trial court sentenced appellant to ten years' imprisonment.

The dispositive issue before this Court is whether the trial court abused its discretion in denying appellant's request to reopen the evidence before the charge was read to the jury. We reverse the trial court's judgment and remand for further proceedings.

## Factual and Procedural Background

On October 9, 1999, undercover narcotics officer Bonita Davis Morgan attempted to buy crack cocaine from appellant at his home. According to Morgan, appellant refused to sell the drugs, but offered to trade the drugs for sex. When Morgan refused, he sent her next door to buy drugs. Morgan obtained a search warrant for appellant's house and the house next door. On October 10, 1999, the warrants were executed by Morgan and two tactical teams. Both houses were searched at the same time.

Morgan testified that during the search handguns and a large amount of cash were found in plain view on a dresser in one of the bedrooms in appellant's house. Morgan said the bedroom also contained a chest of drawers on the opposite side of the room from the dresser. According to Morgan, magazines and ammunition for the handguns, a cell phone, and several small baggies were also found on the dresser in the bedroom. She took a picture of the dresser and the items found on the dresser, but had misplaced it on the day she testified. That evening, she found the picture and the State was allowed to reopen to offer the photograph of the dresser and the evidence found there. A shotgun was also found in a corner of the bedroom and Morgan's photograph of the shotgun was introduced into evidence. Morgan testified a scale was found in appellant's house, but she could not remember where it was found inside the house. The actual scale was introduced in evidence. Morgan did not say whether she

took a photograph of the scale that was found in the house.

Cocaine was found in two locations in appellant's house. One officer found approximately 1.6 grams of cocaine on the chest of drawers in the bedroom. Morgan photographed the cocaine on the chest of drawers, but was unable to find the photograph and produce it at trial. Morgan and another officer found baggies containing approximately thirty-one grams of cocaine floating in a toilet. The officer who searched with Morgan removed the baggies from the toilet and put them in the sink to drain the excess water out of the bags. However, some of the cocaine could not be recovered since it was floating, unbagged, in the water in the toilet bowl. After the officer removed the baggies from the toilet, Morgan took pictures of the cocaine still floating in the toilet and of the baggies in the sink. These photographs were admitted into evidence. Morgan testified the water in the toilet was blue because the water supply in the toilet tank was colored by a toilet bowl cleaner. At the time of the search, appellant was the only person in the house. Cocaine was also found in the search of the house next door to appellant.

On cross-examination of Morgan, appellant developed facts reflecting a substantial difference between the total weight of the drugs seized from the search of the house next door and the amount of cocaine the person next door was charged with possessing. The exact weight difference is not clear from the record, but the difference was at least thirty grams.

Appellant denied the cocaine, scale, and baggies were found in his house. Further, appellant claimed that the photographs of the toilet and sink offered by the State were not pictures of his bathroom. He indicated several discrepancies, i.e., his toilet did not have blue water, his sink did not have brass fixtures, and his bathroom did not have a tile floor as shown in the photographs. In response to appellant's claims, the State pointed out in cross-examination, and later in closing argument, that appellant had not brought photographs of his bathroom to support his claims. After appellant testified, both sides closed the evidence. The next morning, before submission of the charge to the jury and final arguments, appellant moved to reopen the evidence to introduce photographs of his bathroom. The trial court denied the motion and the case was submitted to the jury.

## Motion to Reopen

In his first issue, appellant argues on two bases that the denial of his motion to reopen constituted error. First, appellant claims the trial court's refusal to allow reopening violated his constitutional right to testify on his own behalf under both the Texas and federal constitutions. Second, he claims the trial court erred because appellant has a statutory right to present evidence "at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." Tex.Code Crim. Proc. Ann. art. 36.02 (Vernon 1981).

As to appellant's first argument, it was clear that appellant was allowed to testify and did testify specifically that the photographs of the bathroom where the drugs were found did not show his bathroom. Accordingly, no constitutional rights were violated. *See Potier v. State,* 68 S.W.3d 657, 664 (Tex.Crim.App.2002) ("We hold that the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense."). Now, we determine if appellant's second argument holds merit as to

whether a statutory right to present evidence was violated and whether any error was harmful.

### A. *Legal Standard for Reopening Under* TEX.CODE CRIM. PROC. ANN. *art. 36.02 and Harm*

■ A trial court must allow the introduction of testimony at any time before the conclusion of argument of a cause if it appears it is necessary to due administration of justice. *See* TEX.CODE CRIM. PROC. ANN. art. 36.02. We review the trial court's decision whether to reopen the evidence under an abuse of discretion standard. *See Peek v. State,* 106 S.W.3d 72, 79 (Tex.Crim.App.2003). A trial judge is required to reopen a case under article 36.02 only if the proffered evidence is "necessary to the due administration of justice." *Id.* "Due administration of justice" means a judge should reopen the case if the evidence would materially change the case in the proponent's favor. That is, the evidence offered must be shown to be more than "just relevant—it must actually make a difference in the case." *Id.* Thus, the trial court abuses its discretion in denying a timely motion to reopen if the evidence would materially change the case in the proponent's favor. *See Peek,* 106 S.W.3d at 78, 79; *Scott v. State,* 597 S.W.2d 755, 757 (Tex.Crim.App. [Panel Op.] 1979); *Yee v. State,* 790 S.W.2d 361, 362 (Tex.App.-Houston [14th Dist.] 1990), *pet. dism'd,* 815 S.W.2d 691 (Tex.Crim.App.1991).[1]

In its recent *Peek* decision, the court of criminal appeals enunciated a new standard for a trial court's determination of whether a motion to reopen should be granted. The previous standard, set forth in *Vital v. State,* 523 S.W.2d 662, 664–65 (Tex.Crim.App.1975), and refined in several other decisions of the court,[2] was described in *Peek* as meaning "little more than relevance" and "sets forth an extraordinarily low standard." *Peek,* 106 S.W.3d at 79. Under *Vital* and *Rogers,* a trial court's error in denying a motion to reopen was said to be "reversible error." *Rogers,* 774 S.W.2d at 263; *Vital,* 523 S.W.2d at 664–65. However, *Vital* and *Rogers* were decided before the court's recognition that, with rare exceptions, no error "is categorically immune to a harmless error analysis." *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

■ In *Peek,* the court of criminal appeals did not indicate whether a separate harm analysis is required once we apply the materiality test for determining error in denying a motion to reopen. *See Peek,* 106 S.W.3d at 75, 79.[3] Despite the apparent overlap in *Peek*'s materiality standard and the harmless error standard, we will apply both standards. Thus, in deciding whether the trial court erred, we must determine if the proffered evidence would have materially changed the case in the proponent's favor, and if there was error, we must determine whether the error had a substantial influence on the outcome of

---

1. It is unclear under *Peek* whether impeding the progress of the trial remains a consideration in deciding what is necessary to the due administration of justice. *Peek,* 106 S.W.3d at 78–79.

2. *See Rogers v. State,* 774 S.W.2d 247, 263 (Tex.Crim.App.1989); *Cain v. State,* 666 S.W.2d 109, 111 (Tex.Crim.App.1984); *Holifield v. State,* 599 S.W.2d 836, 837 (Tex.Crim.

App.1980); *Tucker v. State,* 578 S.W.2d 409, 410 (Tex.Crim.App.1979).

3. One of the cases cited in *Peek* as rejecting the material change standard, applied a harmless error analysis to the erroneous denial of a motion to reopen. *See Forbes v. State,* 976 S.W.2d 749, 752 (Tex.App.-Houston [1st Dist.] 1998, no pet.), *overruled by Peek,* 106 S.W.3d at 75 n. 4, 79.

the proceeding. *See Burnett v. State,* 88 S.W.3d 633, 637–38 (Tex.Crim.App.2002).

■ If we determine the trial court erred, we apply the harm analysis recently restated by the court of criminal appeals:

For claims of non-constitutional error, we, like the Supreme Court, hold that "a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding." Put another way, if the reviewing court has "a grave doubt" that the result was free from the substantial influence of the error, then it must treat the error as if it did. "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Thus, "in cases of grave doubt as to harmlessness the petitioner must win."

*Burnett,* 88 S.W.3d at 637–38 (footnotes omitted). *See* Tex.R.App. P. 44.2(b); Tex.R. Evid. 103(a) (error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected); *see also King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997); *Montez v. State,* 975 S.W.2d 370, 373 (Tex.App.-Dallas 1998, no pet.). In conducting this analysis, we consider all the evidence that was admitted at trial and examine the record as a whole. *Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim.App.2000).

### B. *Application of Law to Facts*

Appellant was the last witness to testify. He said he did not have blue water in his toilet and he did not have brass fixtures like those shown in the photograph of the cocaine in the sink. Also, he claimed his bathroom floor was vinyl and not a tile floor like the one shown in the photograph of the toilet. On cross-examination, appel-

lant acknowledged that he had offered as an exhibit a photograph of his living room taken by his attorney. Yet, he did not have his attorney take pictures of his bathroom floor or his bathroom sink and bring them to court. Appellant's response was that he did not expect to have to prove whether it was his bathroom. On redirect, appellant said neither he nor his attorney had seen the photographs of the bathroom before trial. When asked, "Do you have any problem going right now and taking a pick [sic] of your bathroom floor?" or his faucets, appellant said, "No."

After appellant testified, both appellant and the State closed and the proceedings recessed for the evening. The next morning, before the charge was read to the jury and before argument, appellant moved to reopen the evidence to offer photographs of his bathroom in response to the State's cross-examination of the previous day. The trial court announced that both sides had closed the evidence at the end of the previous day and denied the motion to reopen. Appellant explained that the photographs he intended to offer showed a different toilet, sink, and floor from those in the photographs offered by the State and in which the bulk of the cocaine was found. Appellant later made an offer of proof of the two photographs he intended to offer if allowed to reopen.

■ The motion to reopen was timely. Appellant was present and ready to testify about the proffered photographs. The trial court was clearly informed the testimony and photographs would show, first, that the toilet and sink in appellant's bathroom, and second, that the bathroom fixtures and flooring reflected in appellant's photographs were different than those shown in the photographs offered by the State. This evidence was material and bore directly on a central issue in the case, i.e.,

whether thirty-one grams of cocaine were found in appellant's bathroom as depicted in the photographs sponsored by the State. Although appellant had testified to these discrepancies, the proffered photographs were more than relevant, they would have made a difference in the case by showing what appellant's bathroom allegedly looked like and by rebutting the State's cross-examination about appellant's failure to produce photographs showing the alleged differences between his bathroom and the bathroom shown in the photographs offered into evidence by the State. Further, there was no showing that introduction of the photographs would have impeded the progress of the trial. Unlike *Peek*, the State did not object to appellant's motion to reopen and presented no evidence of prejudice or delay if the motion were granted. *See Peek*, 106 S.W.3d at 73–74 (state objected to motion to reopen because state would call rebuttal witness and court found it would cause unreasonable delay).

The defense's theory was that, at best, the police had unintentionally confused the evidence and photographs from the raid on the house next door with the raid on appellant's house. In the alternative, assuming the worst, appellant theorized the incriminating evidence was planted by the police in order to retaliate against him because he had made a prior internal affairs complaint against one of the patrol officers he identified at the scene. A number of inconsistencies in the State's evidence could be viewed as supporting appellant's theories.

First, the evidence showed that Morgan could not remember in which room of appellant's house the scale was found and did not offer a photograph showing the scale. Yet, Morgan testified that the scale introduced at trial was found in appellant's house. She acknowledged a small digital scale was seized at the house next door. The prosecution report prepared by one of the other officers did not mention that a scale was found in appellant's house, although the return of the search warrant showed a scale was seized.

Second, Morgan testified the evidence from the two raids was kept separate. However, one of the officers who searched appellant's house also transported to the property room the drugs seized from the house next door. The defense developed evidence of a discrepancy of at least thirty grams of cocaine between the amount of cocaine seized at the house next door and the amount of cocaine the person next door was charged with possessing. Morgan acknowledged that the seizure affidavit she signed for property taken from appellant's house did not mention the bathroom or any property taken from the bathroom. In the affidavit, she said only that "several" grams of a controlled substance were found on a dresser in one room along with money, firearms, a cell phone, and a scale.

Third, Morgan testified that when the other officers found evidence during the search, she photographed each piece of evidence. In addition to the photographs of the bathroom, she took a photograph of the 1.6 grams of cocaine found on the chest of drawers and a photograph of the handguns, money, cell phone, and plastic baggies found on the dresser in appellant's bedroom. At the time the State presented its case-in-chief, Morgan claimed she had misplaced these photographs and could not remember if they had been mixed up with the other case. However, the next day, the State was allowed to reopen its case to present the photograph of the dresser because Morgan had found that photograph in her files the prior evening. Yet, in her search of her file Morgan did not find the photograph of the 1.6 grams of cocaine

found on the chest of drawers in the bedroom.

It is clear that the photographs of the evidence played a major part in this case. Although appellant testified the State's bathroom photographs were not of his bathroom, he presented no independent corroboration of this material fact, such as a photograph. The State repeatedly emphasized on cross-examination that appellant had not presented photographs of his bathroom to support his testimony, while appellant had brought other photographs of his house to trial. In closing argument, the State emphasized that the photographs of the bathroom it brought forward corroborated the police officer's testimony about finding the drugs in the blue toilet water.

After reviewing the entire record, we conclude the proffered photographs would have materially changed the case in appellant's favor. We further conclude, the error in excluding the photographs by denying the timely motion to reopen affected appellant's substantial rights and was not harmless. Had the jury been allowed to consider these photographs and believed the thirty-one grams from the toilet were not from appellant's bathroom, the only other evidence of possession would have been the 1.6 grams from appellant's bedroom. That evidence is not enough to support the conviction for possession with intent to deliver four grams or more but less than 200 grams of cocaine. We have grave doubt as to the harmlessness of the error of denying the motion to reopen, which had the effect of excluding the photographs of the bathroom offered by appellant. Thus, we conclude the denial of appellant's motion to reopen and the exclusion of the photographs of appellant's bathroom affected appellant's substantial rights. We resolve appellant's first issue in his favor. Because this holding resolves this appeal, we need not address appellant's remaining issues. *See* Tex.R.App. P. 47.1.

We reverse the judgment of the trial court and remand this cause for further proceedings.