

## OPINION

Nos. 04-06-00251-CR, 04-06-00252-CR, 04-06-00253-CR

Scott Kelly **BIRKHOLZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2004-CR-5574, 2004-CR-5575, 2004-CR-5576
Honorable Pat Priest, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed:   January 14, 2009

REVERSED AND REMANDED

In the early morning hours of January 3, 2003, witnesses came upon a one-car accident in Helotes. They were able to pull one person, Scott Kelly Birkholz ("Birkholz"), from the burning car. The three remaining accident victims perished in the fire: Tracy Birkholz, his wife; Brandon Birkholz, his brother; and Thomas Bowen, his friend. A blood draw showed Birkholz's blood alcohol level was 0.12, and a title search revealed the car involved was registered to his name. Birkholz was arrested and charged with responsibility for the accident.

A jury found Birkholz guilty of three counts of intoxication manslaughter and assessed punishment of community supervision for a period of ten years. The trial court denied Birkholz's motions for a new trial. On appeal, Birkholz contends that (1) the trial court erred in denying his motion to reopen, and (2) the evidence is factually insufficient to support the jury's findings that he was driving. We agree that the trial court erred in failing to reopen the evidence and thus reverse and remand.

## MOTION TO REOPEN

Texas Code of Criminal Procedure article 36.02 provides, "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE. CRIM. PRO. art. 36.02 (Vernon 2007). The Texas Court of Criminal Appeals has noted that a "due administration of justice" requires a judge to reopen the case if the evidence would materially change the case in the proponent's favor. *Peek v. State,* 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). That the proffered evidence is relevant is not enough; it "must actually make a difference in the case" and not be cumulative of evidence previously presented. *Id.; see also Salazar v. State,* 38 S.W.3d 141, 155 n.7 (Tex. Crim. App. 2001). In addition, the new evidence must be introduced prior to closing arguments in order to meet the standard. *Peek,* 106 S.W.3d at 79.

We review the trial court's decision on a motion to reopen for an abuse of discretion. *See Peek,* 106 S.W.3d at 79. There is an abuse of discretion if the trial court denies a timely motion to reopen and the proffered evidence would have materially changed the case in the proponent's favor. *See id.* at 78. We will not disturb the trial court's ruling unless such ruling falls outside the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Further, no reversible error exists in the refusal to reopen unless a substantial right of a party is affected. TEX. R. APP. P. 44.2(b); *Rodriguez v. State,* 974 S.W.2d 364, 370 (Tex. App.–Amarillo 1998, pet. ref'd).

***Relevant Facts***

On January 3, 2003 at approximately 2:45 a.m., witness Debbie Crow was driving her car when she saw a fire. As she got closer she realized the fire came from a car that was upside down and burning from the back. Crow called 911 and then approached the car, which was so full of smoke she was unable to see inside. Crow unsuccessfully attempted to break in the driver's window. A few minutes later, witness David Green arrived on the scene, and was able to kick in the driver's side window. Birkholz reached his hands out of the car, and Crow and Green pulled him out. They dragged him a few feet away from the vehicle. While Green tended to Birkholz, Crow returned to the car to help the other occupants escape, but was unsuccessful. They then moved Birkholz further away from the car. Birkholz appeared dazed and incoherent, and was unaware he had been burned.

Law enforcement officers then began responding to the accident. Bexar County Sheriff's Deputy Belton Johnson was the first to arrive, and he noticed that Birkholz smelled like alcohol. He sat Birkholz in his patrol car so he would not be hurt; however, he then realized Birkholz's clothes were still smoking, and moved him back outside. Birkholz was placed on a gurney, and paramedics began cutting his clothes away from him. As they tried to treat Birkholz, he was uncooperative and combative, removing and shredding the burn blanket, pulling at belts, and being belligerent with the technicians.

Another sheriff's deputy, Dennis O'Steen, went to the ambulance where the technicians were treating Birkholz. At that point, paramedic Robert Moya told O'Steen that if he wanted to talk

to Birkholz he needed to do it then, because they were going to sedate him in order to continue treatment. Birkholz told O'Steen repeatedly that he was not driving the car. When asked who else was in the vehicle, Birkholz first said he did not know, then said it might have been his wife and brother. It was not until the fire was put out that officials realized a third victim was in the car.

After O'Steen questioned Birkholz, Moya gave Birkholz 3 milligrams of Versed to sedate him, and then 100 milligrams of Vecuronium, a paralytic agent that enabled the paramedics to intubate Birkholz so he could breathe more easily and be treated for his burns. Due to this sedation with Versed, the effects of which are enhanced by alcohol, Birkholz lost his memory of the accident and the events leading up to it. At trial, Moya testified that the amnesia-producing drug Versed can cause someone to experience amnesia and retrograde amnesia. Individuals given Versed do not recall incidents at or around an event.

Birkholz was airlifted to University Hospital, where a blood draw was performed at approximately 5:45 a.m. Birkholz's blood-alcohol level was approximately 0.12 at the time of the draw. Extrapolation revealed that his blood-alcohol level at the time of the accident was approximately 0.18. Credit card records revealed that prior to the accident, the group had been to several establishments that evening, charging alcoholic drinks at each.

### Motion to Reopen with New Evidence

Birkholz was indicted on three counts of intoxication manslaughter. At trial, the key issue argued by both sides was whether Birkholz was driving the car. The State presented evidence in support of its argument that Birkholz was driving the car at the time of the accident. Evidence presented at trial included: the fact that Birkholz was pulled from the window on the driver's side of the car; Birkholz's ownership of the car; Birkholz's statement before sedation that his wife was

behind him in the car (evidence showed Tracy Birkholz was seated in the back seat behind the driver); the fact that when first approached by the sheriff's deputy after the accident (and before sedation), Birkholz repeatedly stated he had not been driving, even though no question was asked regarding that issue; and the fact that when the car was turned back over onto its wheels after the accident, Bowen was in the front passenger seat.

Birkholz's defense was based on his argument that Bowen was driving the car. Evidence presented at trial included: testimony that Birkholz suffered an injury to his leg three days before the accident, and that he had been on crutches on those days and unable to drive; testimony that Bowen was seen driving Birkholz's car the day before the accident; evidence that the driver's seat position was too far back for Birkholz to have been driving; expert testimony by an accident reconstructionist explaining how the force of the accident could have resulted in Birkholz, his wife, and Bowen ending up in a "sandwich" such that Birkholz was on top and was the most accessible from the driver's side window following the accident; testimony regarding Birkholz's history of being a responsible drinker and driver; and a showing that Bowen's legal blood-alcohol level was consistent with the defense theory that Bowen was the designated driver for the evening.

Birkholz's first issue on appeal stems from the introduction of a photograph during cross-examination of the defense's expert witness, accident reconstructionist Max Scott. Scott gave testimony based on occupant kinematics, or what happens to individuals in a vehicle during an accident. Information is gathered from measurements at the scene, witnesses, and evidence, and is used to show what happened to car occupants during an accident.

During the State's cross-examination of Scott, it introduced an enlargement of a picture previously introduced, depicting Bowen after he had been taken from the car and laid on a sheet.

The enlarged photo focused on Bowen's torso, and showed a fragment of a seat belt draped across his chest. Pictures of the car after the accident reveal that the seat belt fragment somehow ended up on the headliner of the car; both sides agree that someone must have taken it off Bowen's body and thrown it in the car. During the middle of the trial, the State went to the impound lot and collected that seat belt fragment from the right front headliner of the car. It is uncontested that the seat belt fragment depicted on Bowen in the picture is the same seat belt fragment that had been thrown onto the right front headliner of the car and brought to court by the State for introduction as an exhibit, and that the seat belt fragment had one "belt stop button" on it.

On direct examination, Scott had testified that the fragment found in the car was part of the right front passenger seat belt because of its location in the car. After introducing the photograph of Bowen with the belt across his chest, the State began drawing the connection between the belt on Bowen and Scott's testimony that the belt was from the passenger side, therefore reinforcing the State's theory that Birkholz was the driver. However, upon seeing the seat belt fragment and the enhanced photograph in court, Scott testified that he had been wrong. He argued that the seat belt fragment and the belt seen on Bowen in the enhanced photograph were one and the same, and that the belt was from the driver's side of the car, based on the orientation of the belt across Bowen as seen in the enhanced photograph. Scott further noted that the fragment on Bowen had one belt stop button, as did the passenger side seat belt found intact in the car and introduced into evidence through a photograph. While there was discussion of the number of belt stop buttons on the seat belts, it was not conclusively established during testimony whether the front seat belts each had one or two buttons. This testimony was the last of the trial, and both sides rested on a Friday afternoon.

When court reconvened for closing arguments on Monday, Birkholz sought to reopen the evidence. Birkholz explained that he had been surprised the previous Friday with unexpected developments in the case when the State introduced the enlarged photo of Bowen's torso with the seat belt. He noted that the enlarged photograph, together with the State's continued intimation that the front seat belts could have each had two belt stop buttons, led him to do further research over the weekend. As a result, he sought to reopen the evidence to introduce photographs of new and used cars of the same model as the one involved in the accident; he also sought to introduce a replacement seatbelt for Birkholz's car. The photographs and replacement belt showed that the seatbelts had only one belt stop button.

The State responded to Birkholz's motion by indicating it would not argue in closing argument that the seatbelts had two belt stop buttons. Birkholz argued, however, that the point had already been introduced by the State during cross-examination of his expert witness. When the court asked the State what it would do if it allowed to Birkholz to reopen, the State replied that it would recall its expert witness who was in College Station. The court asked Birkholz whether this issue was important enough to cause a delay in the trial so that the State's expert could be recalled. Birkholz answered that he did not understand the State's need for its expert witness, as the State said it did not believe the number of belt stop buttons was significant.

Birkholz sought to reopen by arguing that the new physical evidence showing only one "belt stop" button per seat belt was unequivocal physical proof of Birkholz's innocence. Birkholz argued this was a critical issue in dispute, and he had exhibits that would incontrovertibly establish that the belt on Bowen was the driver-side seat belt. The proffered evidence included the photograph showing the portion of the passenger-side seat belt with the stop button still intact in the wrecked

car, which by process of elimination proved the seat belt fragment with the "belt stop" button found on Bowen was from the driver's side. The court denied Birkholz's motion to reopen, and received the exhibits offered into evidence for purposes of the record only. Consequently the jury was never presented with this evidence.[1]

*Analysis*

*Peek v. State,* 106 S.W.3d 72 (Tex. Crim. App. 2003), established the current standard for analysis of motion to reopen errors. In *Peek*, the court upheld the appellate court's conclusion that the trial court did not abuse its discretion in denying a motion to reopen; however, the circumstances of the case and the weight of the evidence the proponent sought to introduce distinguish it from Birkholz's case. The Peeks were charged with injury to a child, and sought to reopen the case with evidence of medical records from a hospital trip. *Peek,* 106 S.W.3d at 74 (citations omitted). The trial court denied their motion to reopen, as evidence of the hospital trip had already been admitted and the medical records offered nothing material to disprove that the Peeks committed the injury. *Id.* The appellate court affirmed, noting that "[i]f the defendant seeks to reopen, there is abuse of discretion only if the evidence would have materially changed the case in the defendant's favor." *Id.* After the appellate court concluded that the medical records would "probably not have materially changed the result in [the Peeks'] favor," the Peeks appealed the material change test, as at that time

---

[1] The record indicates that for various reasons, the investigation at the scene of the accident was lacking in some respects. On-scene measurements taken were very basic; a diagram taken did not agree with the sequence of events; and there was no technical investigation of the vehicle to determine the contact and induced damage incurred to the vehicle. No inventory was taken of missing parts, such as headrests and seat belts. The seat belt fragment at issue was not discovered earlier by the defense because it was taken off Bowen's body and thrown onto the headliner in the car wreckage, rather than bagged and entered into evidence.

The medical examiner came to the scene and surveyed it while the car was still on its roof. However, before the bodies were extracted from the vehicle, she was called away to a homicide when four policemen were shot at another location. In addition, there was some confusion because one medical examiner listed Bowen as the driver of the car; this was later changed at the request of the State. The Deputy Chief Medical Examiner testified that the policemen shooting resulted in a "less complete investigation by our investigator than would have been ideal, but that happens."

Texas appellate courts disagreed on the appropriate test. *Id.* at 74-75. The Texas Court of Criminal Appeals affirmed the appellate court, adopting the material change test for application to motions to reopen. *Id.* at 79.

Although only a few Texas cases have applied the *Peek* analysis, an opinion issued by our sister court in Dallas provides a similar scenario to Birkholz's. *See Reeves v. State*, 113 S.W.3d 791 (Tex. App.—Dallas 2003, no pet.). Reeves was convicted of possession with intent to deliver cocaine. *Id.* at 792. At trial, the State entered into evidence photographs which purported to depict Reeves's bathroom with incriminating evidence on the counter. *Id.* at 793. During his testimony, Reeves denied that the bathroom represented in the photographs was his. *Id.* Reeves, who had photographs he wanted to introduce in order to prove the discrepancy, filed a motion to reopen the evidence before the jury charge was read. *Id.* The trial court denied his motion to reopen. *Id.* Reeves appealed his subsequent conviction, and the appellate court reversed and remanded the case to the trial court for further proceedings. *Id.* at 792.

The court in *Reeves* noted that the Texas Court of Criminal Appeals in *Peek* did not indicate whether a separate harm analysis should be conducted after application of the materiality analysis; consequently, the court decided to apply both standards. *See id.* at 794-95. The court referenced the following harm analysis as stated by the Court of Criminal Appeals:

> For claims of non-constitutional error, we, like the Supreme Court, hold that "a conviction should not be overturned unless, after examining the record as a whole, a court concludes that an error may have had 'substantial influence' on the outcome of the proceeding." Put another way, if the reviewing court has "a grave doubt" that the result was free from the substantial influence of the error, then it must treat the error as if it did. "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." Thus, "in cases of grave doubt as to harmlessness the petitioner must win."

*Id.* at 795 (*quoting Burnett v. State,* 88 S.W.3d 633, 637-38 (Tex. Crim. App. 2002) (footnotes omitted)). *See* TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103(a) (error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected); *see also King v. State,* 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A harmless error analysis requires consideration of all evidence admitted at trial and the record as a whole. *Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).

In performing the *Peek* analysis, the court in *Reeves* noted the following: the motion to reopen was timely; the appellant was present and ready to testify about the proffered photographs; and the trial court was clearly informed the testimony and photographs would show that the room depicted in the State's photographs was not the same as that depicted in the appellant's photographs. *Reeves,* 113 S.W.3d at 795. The court also noted that "the evidence was material and bore directly on a central issue in the case . . . . [a]lthough appellant had testified to these discrepancies, the proffered photographs were more than relevant, they would have made a difference in the case . . . ." *Id.* at 795-96. The court subsequently determined that the proffered evidence would have materially changed the case in Reeves's favor, and the error in excluding the evidence by denial of the motion to reopen constituted harmful error, as the remaining evidence against Reeves was not enough to support a conviction. *Id.* at 797. Thus, the denial of the motion to reopen the evidence affected Reeves's substantial rights. *Id.*

In the instant case, the trial court's denial of Birkholz's motion to reopen affected his substantial rights in much the same way as Reeves. As with Reeves, Birkholz made the motion to reopen in a timely fashion, and had the evidence in hand at the time the motion was made. The trial court was clearly informed that the evidence being offered by Birkholz would show that the seat belt

fragment found lying across Bowen was in fact from the driver's side, substantially increasing the likelihood that the jury would accept Birkholz's argument that Bowen was the driver. If a jury presented with the evidence of the enlarged picture of Bowen and the seat belt specifications of the car in question agrees with the contention that the seat belt draped across Bowen was from the driver's side, the evidence could potentially prove Birkholz was not behind the wheel during this accident. As such, the evidence was material and bore directly on a central issue in the case–whether Birkholz was driving the car involved in the accident. *See Peek,* 106 S.W.3d at 78. If the jury construed the evidence to indicate that Bowen was the driver, Birkholz could not have been convicted for three counts of intoxication manslaughter.

Based on this analysis, the requirements of the *Peek* material change analysis and harm analysis were met. *Peek,* 106 S.W.3d at 78; *Burnett*, 88 S.W.3d at 637-38. Consequently, the trial court abused its discretion when it denied Birkholz's motion to reopen. *See Peek,* 106 S.W.3d at 79. Because Birkholz's substantial rights were affected when he was denied the opportunity to defend himself with this evidence, reversible error exists. *See* TEX. R. APP. P. 44.2(b) (reversible error exists in the refusal to reopen if a substantial right of a party is affected); *Burnett*, 88 S.W.3d at 638 ("in cases of grave doubt as to harmlessness the petitioner must win"). Accordingly, Birkholz's first issue is sustained.

### FACTUAL SUFFICIENCY

Because we sustain Birkholz's first issue, we need not reach the factual sufficiency issue. However, we note that the State argued the trial court did not abuse its discretion in denying the motion to reopen because the weight of the evidence was so heavily against Birkholz, therefore, the issue of whether or not the seat belt found on Bowen indicated Bowen was the driver was not

material to the case. We disagree. The evidence which was denied admission under the motion to reopen could have had a diminishing effect on the evidence against Birkholz, and could have affected the jury's determination of the weight afforded contradicting testimony. The motion to reopen was a separate and distinct issue presented to our court, and proper evaluation necessitated distinguishing it from the factual sufficiency issue. Nevertheless, because we sustain Birkholz's first issue, it is unnecessary for us to address Birkholz's factual sufficiency challenge.

## CONCLUSION

The trial court abused its discretion when it denied Birkholz's motion to reopen with material, potentially dispositive evidence. Consequently, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.

Catherine Stone, Chief Justice

PUBLISH