In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00023-CR
_____

**GERALD DEE TAYLOR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 15-22390**

**MEMORANDUM OPINION**

Gerald Dee Taylor[1] was indicted by a grand jury for the offense of possession

of a controlled substance in an amount less than one gram, a state jail felony. *See*

Tex. Health & Safety Code Ann. § 481.115(a), (b) (West 2017). Taylor pled not

---

[1] The case style and filings contain the name "Gerald," as does the TDCJ information, and the reporter's record. However, there are certain documents in the clerk's record that contain the name "Gerard."

guilty, and he was tried by a jury and convicted. The court assessed punishment at two years in state jail. Taylor appeals his conviction, raising two issues. First, he asserts the trial court abused its discretion by allowing the State to re-open its case in chief to present additional evidence which did not materially change the case in the State's favor. Second, Taylor argues the trial court abused its discretion in admitting evidence seized from Taylor without a warrant.

## Background

On the night of March 20, 2015, Taylor was with his girlfriend, Mary Metoyer, and her two children, an 8-year-old and a 1-year-old, at Metoyer's apartment. Shortly after 11 p.m., Metoyer called 911 after she smoked a cigarette laced with phencyclidine (PCP). Metoyer was very emotional and confused when she spoke with the 911 operator and claimed that she could not remember anything and needed help. Metoyer had difficulty communicating coherently with the operator and handed the phone to her eight-year-old daughter. Metoyer's daughter was audibly crying as she spoke to the operator, said she was scared, and described her mother's erratic behavior. The young girl also told the operator her "daddy was acting funny" as well and could not remember anything.[2]

---

[2] Although Taylor was not the child's biological father, there was evidence in the record that Metoyer's daughter called Taylor "Daddy."

2

The 911 operator advised that she was going to send the police to the apartment to make sure everyone was okay. She tried to keep Metoyer's daughter on the phone until police arrived. At approximately eight minutes and fifty seconds into the call, Metoyer got back on the phone with the operator. When Metoyer returned to the line, she claimed that she was alright, she dreamed somebody was smoking some "juke," and she woke up out of her sleep "tripping." Metoyer also told the 911 operator her daughter was "tripping" and just confused. Metoyer admitted to the 911 operator she had been drinking, but said they were "alright." The 911 operator explained that due to the nature of the call, she could not cancel it, and the police had to complete the contact to make sure everyone was safe.

Multiple Beaumont police officers arrived at the apartment and knocked on the door. Metoyer answered the door and began talking to the officers. Upon arrival, officers could smell the strong odor of PCP coming from inside the apartment. The officers could not see the children when Metoyer opened the door. She admitted to the officers, and at trial, that she had been smoking PCP. The officers asked Metoyer to come outside, and she complied. Officer Viator testified Metoyer was cooperative but was obviously under the influence of something or had a medical condition.

Shortly thereafter, officers observed Taylor walk by the open door inside the apartment and asked him to step outside, as well. Officer Viator had concerns about

3

the children, given the strong odor of PCP coming from the apartment, and wanted to get inside to make sure they were okay. Instead of complying, Taylor attempted to shut the door to prevent officers from entering the apartment, but Officer Viator put his hand up to keep the door from closing. While initially hesitant to leave, Taylor complied and did not resist when he was taken from the apartment. Officer Viator did not arrest Taylor or pat him down, but simply handed Taylor off to Officer McCauley, who was also at the scene.

Once Taylor was out of the apartment, Officer Viator entered to locate the two children. He found the eight-year-old daughter crying on her bed and the baby in a crib asleep. Officer Viator did not search the apartment for drugs or drug paraphernalia. He indicated his foremost concern was the safety of the children.

While outside the apartment, Officer McCauley patted Taylor down. Taylor's speech was slurred and his eyes were glassy and bloodshot, so McCauley believed he appeared to be intoxicated. As he patted down Taylor, McCauley could still smell a very strong chemical odor. In the process of patting Taylor down, Officer McCauley noticed Taylor had a cigarette tucked behind his right ear. McCauley observed that the cigarette appeared wet and discolored as if it had been dipped in something, in addition to having the strong odor of PCP emanating from it. McCauley put on gloves, retrieved the cigarette for evidence, and arrested Taylor.

4

At trial, Taylor testified he did not have a cigarette or anything else behind his ear. After resting, but before the charge was read to the jury, the State asked to reopen its case. The State asserted it had newly available evidence and wanted to cross-examine Taylor regarding prior inconsistent statements he made to the judge during plea negotiations. Taylor objected to allowing the State to reopen, but the trial court overruled the objection and allowed it. After reopening the case, the State cross-examined Taylor regarding prior admissions that he made to the judge. During that examination, Taylor admitted he told the judge that on the night he was arrested, he "had a plain cigarette behind [his] ear."

## I. Article 36.02: State Allowed to Reopen Its Case

### A. Standard of Review

In his first issue, Taylor argues the trial judge erred in allowing the State to reopen its case. We review a trial court's decision to reopen a case pursuant to article 36.02 under an abuse of discretion standard. *See Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003); *Reeves v. State*, 113 S.W.3d 791, 794 (Tex. App.—Dallas 2003, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 36.02 (West 2007).

### B. Analysis

Article 36.02 provides that a court "shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary

to [the] due administration of justice." Tex. Code Crim. Proc. Ann. art. 36.02. "'[D]ue administration of justice' means a judge should reopen the case if the evidence would materially change the case in the proponent's favor." *Peek*, 106 S.W.3d at 79; *Reeves*, 113 S.W.3d at 794. Under the "due administration of justice" requirement, the evidence must be more than relevant; it must make a difference in the case. *Peek*, 106 S.W.3d at 79. The evidence cannot be cumulative. *Id.* at 78–79; *Haskett v. State*, No. 01-14-00153-CR, 2014 WL 7474122, at *1 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.) (mem. op., not designated for publication). Moreover, the evidence must be introduced prior to closing arguments. *Birkholz v. State*, 278 S.W.3d 463, 464 (Tex. App.—San Antonio 2009, no pet.) (citing *Peek*, 106 S.W.3d at 79).

At trial, Taylor testified that he did not have a cigarette or anything else behind his ear when he was arrested. After reopening the case, the State recalled Taylor for additional questioning and delved into Taylor's prior inconsistent statement to the judge. During this cross-examination by the State, Taylor ultimately admitted that he told the judge he had a plain cigarette behind his ear.

Taylor contends on appeal the evidence did not materially change the case in the State's favor and thus, should have been disallowed. Taylor's admission that he had a cigarette behind his ear when he was arrested directly contradicted his earlier

6

testimony before the jury that he had no cigarette of any kind on him when he was arrested, which goes to Taylor's credibility as a witness. Moreover, the fact that Taylor told the judge in earlier proceedings he had a cigarette behind his ear lends credence to the officers' version of events. This alone could have changed the case significantly given the fact that up until this line of questioning, Taylor insisted he had nothing behind his ear, which directly contradicted the testimony of the officers.

Taylor also asserts on appeal that the evidence was not "newly available." Taylor objected at trial, arguing that the evidence was available to the State during its case-in-chief. However, it is not a requirement of article 36.02 that the evidence be "newly discovered." *See Miller v. State*, No. 14-15-00293-CR, 2016 WL 4145745, at *3 (Tex. App.—Houston [14th Dist.] Aug. 4, 2016, no pet.) (mem. op., not designated for publication) (citing *Scott v. State*, 597 S.W.2d 755, 758 (Tex. Crim. App. [Panel Op.] 1979)).

Finally, in the present case, although the State rested, it moved to reopen its evidence prior to either side's presentation of closing arguments. Accordingly, the timing was such that it was within the trial judge's sound discretion to reopen the case for the "due administration of justice." *See* Tex. Code. Crim. Proc. Ann. art. 36.02; *Reeves*, 113 S.W.3d at 794; *Peek*, 106 S.W.3d at 79; *Miller*, 2016 WL 4145745, at *2.

7

We conclude the trial court did not abuse its discretion in allowing the State to reopen to offer further evidence under these circumstances. We overrule issue one.

## II. <u>Issue Two: Admission of Evidence Obtained Without a Warrant</u>

In his second issue, Taylor complains the trial court abused its discretion by admitting a PCP cigarette into evidence, after the cigarette was allegedly seized as a result of a warrantless search in violation of the Fourth Amendment and Fourteenth Amendments to the United States Constitution and in violation of article one, section nine of the Texas Constitution. *See* U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9.

### A. Standard of Review

We review the trial court's admission of evidence under an abuse of discretion standard.[3] *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

---

[3] The standards of review for a trial court's admission of evidence and ruling on a motion to suppress are different. A trial court's ruling on the admission of evidence is reviewed for an abuse of discretion, whereas a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007) (discussing standard of review for ruling on the admission of evidence); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)) (outlining standard of review for ruling on a motion to suppress). In doing so, a reviewing court gives almost total deference to a trial court's determination of historical facts and examines the court's application of the law *de novo*. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d

**B. Analysis**

Here, the State concedes it did not have a warrant. The Fourth Amendment of the U.S. Constitution and article one, section nine of the Texas Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Tex. Const. art. I, § 9. There are exceptions to the general requirement that the State have a warrant. The applicable exception in this situation is the emergency doctrine, which the State argues.[4] Under the emergency doctrine, police officers may make warrantless entries and searches if they reasonably believe a person within is in need of immediate aid. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *Shepherd v. State*, 273 S.W.3d 681, 683–84 (Tex. Crim. App. 2008); *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003). The burden of proof is on the State to establish an exception to the general rule requiring a warrant. *Janicek v. State*, 634 S.W.2d 687, 691 (Tex. Crim. App. 1982). We apply an objective standard based on the police officer's conduct and the facts known to the officer at the time of the search to ascertain whether a

---

323, 327 (Tex. Crim. App. 2000). Taylor did not file a motion to suppress the PCP cigarette at trial, so we employ an abuse of discretion standard of review rather than the bifurcated standard. *See Casey*, 215 S.W.3d at 879; *Amador*, 221 S.W.3d at 673.

[4] The emergency doctrine applies when police act in their caretaking functions of protecting or preserving life or avoiding serious injury, which is unlike the exigent circumstances doctrine. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008); *Laney v. State*, 117 S.W.3d 854, 860 (Tex. Crim. App. 2003).

warrantless search was justified pursuant to the emergency doctrine. *See Shepherd*, 273 S.W.3d at 684; *Laney*, 117 S.W.3d at 862. "If a search is justified under the emergency doctrine, the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Shepherd*, 273 S.W.3d at 684.

At trial, Taylor did not file a motion to suppress nor did he object to the testimony from the scientist regarding the cigarette testing positive for PCP. Two of the State's witnesses testified at length about the cigarette absent any objection from Taylor. It was only after these witnesses testified and when the State moved to admit the actual cigarette into evidence that Taylor objected based on violations of the state and federal constitutions. Taylor's objection went solely to the admissibility of the PCP cigarette. The trial court overruled Taylor's objection and admitted the cigarette into evidence.

Testimony and evidence admitted by the State clearly established an emergency requiring a response from law enforcement. Taylor's girlfriend, Metoyer, called 911 begging for help. In that call, she was described as confused, disoriented, emotional, and complaining that she could not remember anything. When asked by the 911 operator initially if she had been doing any drugs or drinking, she responded that she did not know. Metoyer also advised that she had small children in the home, and handed the phone to her eight-year-old daughter during the 911 call. On a

recording of the 911 call played for the jury, the daughter can be heard speaking to the operator while audibly crying. The young girl explained to the operator her parents could not remember anything. In the background, Metoyer can be heard telling her daughter to tell the 911 operator that she is a diabetic and has high blood pressure. The young girl told the operator she was scared. The 911 dispatcher relayed this information to the police officers. The nature of the call, when viewed objectively, made it clear that there were emergency circumstances in the apartment where Taylor and his girlfriend were located, and the police were allowed to enter and search based on that exception.

Moreover, the testimony of the officers established they were met with the overwhelming odor of PCP emanating from the apartment. The distinct odor, coupled with the 911 call that confirmed the presence of small children in the home in distress, justified police entry without a warrant. Providing further legitimacy to the officers' claims of an emergency, Officer Viator testified that he did not search the apartment for drugs, as his only concern was finding the children and making sure they were safe. There was uncontested testimony from Officer McCauley that after securing Taylor and smelling the odor of PCP coming from the apartment, he conducted a pat-down of Taylor to make sure Taylor did not have any weapons that could be used to hurt any of the officers at the scene. It was during this lawful pat-

11

down that Officer McCauley observed the cigarette behind Taylor's ear in plain view. If the emergency exception applies, officers may seize evidence that is in plain view during the course of their legitimate emergency activities. *See Mincey*, 437 U.S. at 392; *Laney*, 117 S.W.3d at 862.

Based on the record before us, we conclude the State established at trial that the warrantless search fell under the emergency doctrine. Thus, the trial court did not abuse its discretion when it overruled Taylor's objections to the admission of the cigarette and admitted the evidence for the record. Issue two is overruled.

### III.  Conclusion

We conclude the trial court did not abuse its discretion in allowing the State to reopen its case and further examine Taylor regarding prior inconsistent statements he made regarding his possession of a key piece of physical evidence. We further determine the State established the emergency doctrine applied in this case, which justified their warrantless search and seizure of the PCP cigarette that was in plain view. We overrule Taylor's issues and affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 2, 2018
Opinion Delivered July 25, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.