**Opinion issued May 11, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NOS. 01-19-00904-CR & 01-19-00905-CR**

———————————

**JONATHAN LEE GOLATT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1554335 & 1554336**

---

# O P I N I O N

A jury found Jonathan Lee Golatt guilty of two charges of aggravated sexual assault of a child and assessed his punishment at 65 years' confinement for each offense. Golatt appeals contending that the trial court erred in refusing to reopen the evidence after both sides had rested during the punishment phase. We affirm.

## BACKGROUND

A grand jury issued two indictments against Golatt. Each indictment alleged that he committed a separate act of aggravated sexual assault against a child, his girlfriend's daughter. *See* TEX. PENAL CODE § 22.011(a)(2), (c)(1). One indictment alleged Golatt digitally penetrated the girl's vagina, and the second indictment alleged that he performed oral sex on her. *See id.* § 22.011(a)(2)(A), (C).

Golatt pleaded not guilty to both offenses, which were consolidated for trial and tried to a jury. During the guilt-innocence phase, the State called eight witnesses, including the complainant, J.S., who was 15 years old at trial. The defense called no witnesses during the guilt-innocence phase.

J.S. testified that she had loved Golatt, who had been like a father to her from the time she was a little girl. But after a school counselor became concerned that J.S. might be suicidal, her mother and grandmother took her to the hospital, where J.S. divulged that Golatt had molested her.

Golatt first began talking to J.S. about sex in a way that made her uncomfortable when she was 11 years old. That first encounter took place in J.S.'s bedroom. She was in bed, and Golatt was giving her "the birds and bees talk." When Golatt tried to pull her blanket off to show her something, J.S. testified that she "freaked out" because she thought he intended to have sex. Golatt then stopped.

On a later occasion, Golatt exposed himself while J.S. was playing video games and insisted that she touch his penis. He told her that this was something she needed to learn because she was getting older. J.S. eventually touched Golatt's penis so that he would leave her alone.

Golatt also began buying things that J.S. liked, such as soft drinks. Golatt would tell J.S. that she could have one if she let him do something sexual to her. J.S. testified that he asked to lick her "private part" in particular and persisted in asking on a daily basis. J.S. eventually allowed him to do so in the hope that he would stop asking. During this episode, Golatt put his mouth and tongue on J.S.'s breasts and vagina. He also "used his fingers" to penetrate her.

Subsequently, Golatt came into J.S.'s room many nights and asked her to engage in sexual conduct again. At times he offered to pay her money for sex or offered other inducements. On the last occasion when this occurred, Golatt came into her room with a condom and pressured her to "go all the way." J.S. refused Golatt's repeated sexual advances. But she was scared that Golatt would force her to have sex.

J.S. testified that she hated herself as a result of Golatt's behavior. She felt like "something special" had "been taken away from" her and that there was "nothing good about [her] anymore" afterward. J.S. stated that she "could not really

3

think of him as a stepdad anymore because of what he had done," but she "still cared about him." She testified that Golatt's denial that he committed these acts "hurt."

J.S.'s mother, one of her teachers, and a school counselor testified that J.S. had visible scars on one arm from cutting herself with a razor blade. On one occasion, she cut herself deep enough to require stiches. J.S. also required medication and psychiatric treatment to prevent self-harm.

The jury found Golatt guilty of both charged offenses. The parties then tried the issue of punishment to the jury.

During the punishment phase, the State called four witnesses, including J.S.'s mother. The defense did not call any witnesses or introduce any evidence.

J.S.'s mother testified that J.S. "was depressed for a long time" and had to take medication for her depression and to help her stop cutting herself. J.S.'s mother again testified that J.S. had cut herself so badly on one occasion that she required stitches. J.S. told her that she cut herself because she "needed the pain to push away everything else, to take over so that she would not feel the pain" she experienced as a result of Golatt's sexual abuse.

In addition, J.S.'s mother testified that Golatt was physically violent throughout their nine-year relationship. For example, Golatt punched and choked her. Golatt also damaged her car, busting its windows and tires, and broke into her apartment and took all her possessions.

4

With respect to J.S.'s feelings about Golatt, her mother testified that J.S. "still missed him" despite what he had done. J.S.'s mother described her daughter as "brainwashed" in terms of her feelings for him. J.S.'s mother explained:

> She doesn't want him hurt. She does not want him to suffer. Even though she has, even though she's hurt, she does not want him hurt. She doesn't want him to suffer as much as she did, which is weird for me. But because he was her stepfather for such a long time, I understand the love she had for him at that time, but I feel like it's too much. But she feels like she does not want him hurt.

Her daughter did not "want him to spend the rest of his life in jail." As for herself, J.S.'s mother stated without objection that she hoped the jury would put Golatt in "jail" and "throw away the key."

During the punishment phase, the State also introduced into evidence a stipulation concerning Golatt's prior criminal history. The stipulation stated that Golatt had been previously convicted of the following crimes:

- misdemeanor possession of marijuana in March 2010;

- felony possession of a controlled substance in March 2007;

- misdemeanor criminal trespass in August 2006;

- felony delivery of a controlled substance in September 1999;

- misdemeanor assault in December 1998; and

- felony possession of a controlled substance in October 1997.

Finally, the State put on evidence through several witnesses that peace officers had searched Golatt's apartment in 2016 and found a firearm, a little less than $3,500

5

in cash, and narcotics, including almost 80 grams of cocaine. An officer testified that Golatt told him a local drug dealer had paid Golatt to store these items in his apartment. Golatt also told the officer that as a felon he could not possess a firearm.

After putting on this evidence, the State rested. So did the defense. But before either side made closing arguments or the trial court read the charge to the jury, defense counsel moved to reopen the evidence to present testimony from J.S. The trial court asked defense counsel what the purpose of this testimony would be, and defense counsel stated that J.S. wanted "to express to the jury how she feels and what she thinks should happen to him." The trial court responded that J.S.'s mother had already testified about her daughter's concern for Golatt's wellbeing and that J.S.'s thoughts about punishment in particular were not relevant. Defense counsel stated that J.S.'s proposed testimony would not include a specific sentencing recommendation but that she did not "want to see him hurt." Because this information already had been conveyed to the jury, the trial court refused to reopen the evidence to allow J.S. to testify during the punishment phase.

During closing arguments, both defense counsel and the State commented on J.S.'s feelings about Golatt. The defense emphasized that J.S. would ask "for something reasonable" in terms of punishment, if she could, because she "still cares about him." The State agreed that the jury had heard that J.S. still "loves him" and

"cares about him." But the State argued that "that's what is saddest here, is that she's been so manipulated that she does feel bad for him."

The charge instructed the jury that it could assess a punishment between 5 to 99 years for each offense as well as fines not to exceed $10,000. The jury assessed Golatt's punishment at 65 years' confinement and a $10,000 fine for each offense. The trial court entered separate judgments on the jury's verdicts that ordered the two sentences to run concurrently.

Golatt appeals.

## DISCUSSION

Golatt contends the trial court erred in not reopening the evidence during the punishment phase to allow J.S. to testify that "she did not want to see him hurt." Golatt concedes that J.S.'s mother had already testified that this was the case but argues the jury would have received J.S.'s testimony "much differently" because her mother was angry and vindictive. Golatt does not contend that J.S. would have recommended a particular sentence to the jury.

### Standard of Review

We review a trial court's refusal to reopen for abuse of discretion. *Gilmore v. State*, 792 S.W.2d 553, 554 (Tex. App.—Houston [1st Dist.] 1990, no pet.).

**Applicable Law**

***Reopening to Admit Evidence Before Closing Argument***

The Code of Criminal Procedure requires a trial court to "allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. art. 36.02. The proffered evidence is "necessary to a due administration of justice" if it "would materially change the case in the proponent's favor." *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). In other words, the evidence must be "more than just relevant—it must actually make a difference in the case." *Id.* Evidence that is merely cumulative of other evidence does not meet this standard. *Birkholz v. State*, 278 S.W.3d 463, 464 (Tex. App.—San Antonio 2009, no pet.).

***Evidence Admissible During the Punishment Phase***

Article 37.07, Section (3)(a) of the Code of Criminal Procedure governs the admissibility of evidence during the punishment phase in non-capital cases. *Ellison v. State*, 201 S.W.3d 714, 721 (Tex. Crim. App. 2006). In both bench and jury trials, the parties may offer evidence "as to any matter the court deems relevant to sentencing." TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1). This includes but is not limited to "the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character," and "the circumstances of the offense for which he is being tried." *Id.* In addition, the evidence may include "an extraneous

8

crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has been previously charged with or finally convicted of the crime or act." *Id.* Thus, a jury is allowed to hear and consider a broad range of evidence during the punishment phase. *Ellison*, 201 S.W.3d at 722.

## Analysis

Golatt contends that his complaint on appeal is governed by a four-factor test. According to Golatt, a trial court errs in refusing to reopen the evidence to allow a witness to testify if:

(1) the witness is present and ready to testify;

(2) the motion to reopen is made before counsel makes closing arguments and the trial court reads the charge to the jury;

(3) the movant states with specificity what testimony the witness is expected to give and explains the importance of this testimony; and

(4) it is not apparent that the motion's purpose is to frustrate the due administration of justice.

Golatt argues that J.S.'s proposed testimony satisfies these factors.

In support of his contention that this four-factor test is dispositive, Golatt relies on *Huskey v. State*, No. 01-09-00197-CR, 2010 WL 724519 (Tex. App.—Houston [1st Dist.] Mar. 4, 2010, pet. ref'd) (mem. op., not designated for publication). But we disagree that the four-factor test is dispositive in this case.

9

In *Huskey* and another decision, our court stated the four-factor test Golatt advocates. *See id.* at *3; *Landrian v. State*, No. 01-05-00697-CR, 2009 WL 1562844, at *6 (Tex. App.—Houston [1st Dist.] May 29, 2009, pet. ref'd) (mem. op., not designated for publication). But these decisions are nonprecedential. *See* Tex. R. App. P. 47.7(a) (unpublished decisions "have no precedential value"). And the four-factor test, while relevant, incompletely states the applicable law.

*Huskey* and *Landrian* both relied on *Scott v. State*, in which the Court of Criminal Appeals considered the four factors in holding that the trial court erred in refusing to reopen the evidence after both sides closed to allow the defendant to present an alibi witness. 597 S.W.2d 755, 758 (Tex. Crim. App. [Panel Op.] 1979). But the Court did not explicitly describe these factors as a test. *Id.* Moreover, it analyzed these factors under an admissibility standard that essentially required the trial court to reopen the evidence if the proffered evidence was admissible. *Id.*

Years later, in *Peek v. State*, the Court abrogated this relatively lenient admissibility standard and adopted a more stringent one, which requires the trial court to reopen the evidence only if the proffered evidence "would materially change the case in the proponent's favor." 106 S.W.3d at 79; *see id.* at 80 (Holcomb, J. dissenting) (identifying *Scott* as one of several decisions abrogated by majority).

Thus, the four-part test stated in *Huskey* and *Landrian* is not dispositive. Golatt cannot establish the trial court erred in refusing to reopen the evidence simply by showing the proposed evidence satisfies the four-factor test. He must also show that the evidence would have materially changed the case in his favor as required by *Peek*. *See Lewis v. State*, No. 01-16-00485-CR, 2017 WL 4545865, at *2–4 (Tex. App.—Houston [1st Dist.] Oct. 12, 2017, no pet.) (mem. op., not designated for publication) (applying *Peek* standard without reference to four-factor test); *Jordan v. State*, No. 01-07-00090-CR, 2008 WL 458362, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 20, 2008, pet. ref'd) (mem. op., not designated for publication) (same).

In other words, assuming that Golatt can satisfy the four factors stated in *Huskey* and *Landrian*, he must still show that J.S.'s proposed testimony would have materially changed the case in his favor. *See Peek*, 106 S.W.3d at 79. We recognized as much in *Huskey* and *Landrian*. *See Huskey*, 2010 WL 724519, at *3–5 (trial court did not err in denying motion to reopen because evidence would not have materially changed case in defendant's favor); *Landrian*, 2009 WL 1562844, at *6–9 (same).

Golatt argues that J.S.'s proposed testimony would have materially changed the case in his favor. He posits that a victim's plea for leniency is unique testimony for which there is no substitute and would carry great weight with any jury.

On this record, we disagree. Golatt characterizes J.S.'s proposed testimony in general terms, asserting she would have told the jury "she did not want to see him

11

hurt." But J.S. already testified during the guilt-innocence phase that she still cared about Golatt. During the punishment phase, J.S.'s mother explicitly stated that her daughter "does not want him hurt" and does not "want him to spend the rest of his life in jail." J.S.'s mother further testified that she thought Golatt had brainwashed J.S., but it was clear that this was her opinion, not her daughter's. Because the jury heard the very evidence that Golatt urges it should have heard, albeit from a different witness, and this evidence was limited in scope and general in nature, we hold that the trial court did not abuse its discretion in refusing to reopen the evidence. *See Birkholz*, 278 S.W.3d at 464 (court does not abuse discretion by refusing to reopen to receive cumulative evidence).

## CONCLUSION

We affirm the trial court's judgment.

Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Publish. TEX. R. APP. P. 47.2(b).

12