

# NUMBER 13-20-00029-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CHARLES DUNN A/K/A**
**CHARLES BENNETT DUNN,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                **Appellee.**

---

### On appeal from the 272nd District Court
### of Brazos County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Hinojosa

Appellant Charles Dunn a/k/a Charles Bennett Dunn appeals his conviction for aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). By two issues, Dunn argues that the trial court abused its discretion in: (1) permitting the State to reopen its case after closing to admit a courtroom recording displaying alleged threatening gestures

made by Dunn toward the prosecutor, and (2) denying his motion for a new trial. We affirm.

## I.  BACKGROUND[1]

Dunn was charged by indictment with aggravated assault with a deadly weapon. *See id.* The indictment contained one punishment enhancement paragraph, elevating the charge to a first-degree felony for punishment purposes. *See id.* § 12.32.

### A.  The Trial

On November 11, 2018, several regular patrons of the Green Hornet bar in Bryan, Texas met at the Green Hornet to play dominoes, watch sporting events, and drink. Among the men were Dunn and Danny Howard who had known each other for years. The witness accounts of the events that took place all vary to some degree; however, the common facts are as follows.

Dunn and Howard had just begun a game of dominoes when Dunn noticed one of the dominoes was missing. Dunn accused Howard of cheating. The men argued, and then Howard left the bar. About ten minutes later, Howard returned to the bar. When Howard returned, Dunn began arguing with him again and commented that Howard had a gun. Howard, standing in the bar's entryway, assured Dunn that he was unarmed. After Howard said that he was unarmed, Dunn pulled out a gun and attempted to shoot Howard, misfiring on his first attempt. Dunn shot again, this time hitting Howard in his side. Many

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts); 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

witness accounts assert that Howard did not have a gun and did not show aggression or threaten Dunn in any way; however, Dunn asserts that he shot Howard in self-defense.

After Howard was shot, he was transported to the hospital. The trauma surgeon who performed emergency surgery on Howard testified that Howard's injuries were life-threatening; however, after surgery he was able to recover. Officer Darrel Fikes of the City of Bryan Police Department testified that when he questioned Dunn about the shooting, Dunn never claimed that Howard had a gun, denied shooting Howard, and claimed that Howard "must have shot himself."

A jury found Dunn guilty of the felony offense of aggravated assault with a deadly weapon and found the enhancement paragraph to be true.

## B.     The Punishment Phase

During the punishment phase of the trial, the State presented evidence that on December 20, 2018, Dunn failed to appear in court for his bond hearing. A warrant was issued for Dunn's arrest for failure to appear in court, and a Brazos County Sheriff's Deputy's team made repeated failed attempts to locate and arrest Dunn. On April 8, 2019, the Sheriff's Deputy located and contacted Dunn, who subsequently lied about his identity claiming his name was J.B. Jones. Nevertheless, the sheriff's deputy recognized Dunn and arrested him on six outstanding warrants and for failure to identify as a fugitive.

The State also submitted evidence of a 2014 incident over a parking space. A man had parked on Dunn's property next to the Green Hornet, so Dunn confronted the man and then pulled out a pistol and pointed it at him. The man got into his vehicle to leave and then Dunn shot the pistol four times into the driver's side of the vehicle, hitting the

3

man one time in his leg. Dunn alleged he acted in self-defense. The State also introduced extensive evidence referencing Dunn's prior criminal history, admitting exhibits for eight prior convictions.

Dunn's defense during the punishment phase of trial included his sister's testimony that Dunn was shot and seriously injured in an incident in the 1960's, causing him to have a fear of being shot. During his sister's testimony, the prosecutor asked to approach the bench and reported the following to the trial court:

> Judge, [Dunn] is . . . looking at me and pointing gun fingers at me . . . I don't know what that means, but it's threatening. And he did that to [co-counsel] yesterday.

The Court admonished Dunn for his conduct and warned him to not do it again. Dunn claimed that he had not threatened anybody, nor pointed gun fingers at the prosecutor. After Dunn's sister's testimony, both sides rested and closed. Following a recess, but before the reading of the Court's charge or closing arguments, the State requested to reopen evidence pursuant to article 36.02 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 36.02. The State sought to introduce video evidence from inside the courtroom showing Dunn's threatening gestures toward the prosecutors. Dunn's counsel objected that the State had already rested and closed, the evidence was irrelevant, and the evidence would be unduly prejudicial to Dunn. The trial court overruled those objections and allowed the State to reopen. The State voluntarily agreed not to reference the threats during closing argument, but the video was played for the jury.

Finding one enhancement allegation true, the jury assessed punishment at confinement for life and a $10,000 fine. The trial court signed a judgment in conformity

with the jury's verdict.

**C.     The Hearing on Dunn's Motion for a New Trial**

After the trial, Dunn filed a motion for a new trial based on alleged juror misconduct. During the hearing on the motion for a new trial, Donnie Manry, a court-appointed investigator for Dunn, testified that during the trial he recognized Janice Terrell as a juror and Tim Terrell, her husband, as an observer in the courtroom gallery for approximately three hours the morning of the second day of trial. Manry testified that Tim was present in the courtroom during a period when the jury had been excused for counsel's argument at the bench. Manry also testified that the Terrells went to lunch together that day, but he could not hear any conversation between the two and had no knowledge of any sort of jury misconduct taking place.

Tim testified that he was not paying attention after the jurors had been dismissed and had no knowledge of what was being discussed by the attorneys during the time that counsel was at the bench. Tim also described the only conversation he had with his wife about the case:

> The only comment that was made, my wife asked me what did I think. I said 'This is interesting.' Other than that, I said, 'We don't need to talk any more about it.'

Tim further testified that he did not talk to his wife about the facts of the case or what the outcome should be. Tim is a retired firefighter who had previously been put "under the rule" when he testified in a criminal case, so he testified that he understood the importance of not discussing the case with the jurors.

Following the hearing, the trial court overruled Dunn's motion for a new trial on alleged juror misconduct. Dunn appeals.

## II.  MOTION TO RE-OPEN EVIDENCE

By his first issue, Dunn argues that the trial court erred by allowing the State to reopen its case to admit video evidence of events that took place in the courtroom which jurors could have observed directly.

## A.  Standard of Review & Applicable Law

A trial court's decision to allow a party to reopen evidence under article 36.02 of the Texas Code of Criminal Procedure is reviewed under an abuse of discretion standard. *Birkholz v. State*, 278 S.W.3d 463, 464 (Tex. App.—San Antonio 2009, no pet.). A trial court abuses its discretion if it denies a timely motion to reopen and the proffered evidence would have materially changed the case in the proponent's favor. *Id.* The trial judge's ruling is not to be disturbed unless it "falls outside the zone of reasonable disagreement." *Id.*

Article 36.02 states that "the court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." TEX. CODE CRIM. PROC. ANN. art. 36.02. A "'due administration of justice' requires a judge to reopen the case if the evidence would materially change the case in the proponent's favor." *Birkholz*, 278 S.W.3d at 464; *Peek v. State*, 106 S.W.3d 72, 75 (Tex. Crim. App. 2003). The evidence must not only be relevant, it "'must actually make a difference in the case' and not be cumulative of evidence previously presented." *Id.* Finally, the new evidence must be introduced prior to closing argument. *Birkholz*, 278 S.W.3d at 464

During the punishment phase of a trial, the State may introduce any evidence of

6

an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant. *See* TEX. CODE CRIM. PROC. ANN**.** art. 37.07, § 3(a)(1). Any non-constitutional error that does not affect the defendant's substantial rights must be disregarded. TEX. R. APP. P. 44.2(b). "A harmless error analysis requires consideration of all evidence admitted at trial and the record as a whole." *Birkholz*, 278 S.W.3d at 468–69.

## B. Analysis

During the punishment phase of the trial, Dunn began making "finger guns" towards the prosecutor. The State approached the bench to make the judge aware of Dunn's threatening behavior, and the judge responded by informing Dunn that if it were true, it would hurt his case, so he needed to stop. Dunn responded by expressly denying that he made any threats. Both the State and Dunn rested. Shortly thereafter, but before the jury charge was read or closing arguments began, the State asked to reopen its case pursuant to article 36.02 to admit video evidence of Dunn's threatening behavior. *See* TEX. CODE CRIM. PROC. ANN. art. 36.02.

Dunn objected on the basis that this evidence was not relevant, any relevance was outweighed by unfair prejudice, it did not go to the main issue of the case, the threats did not qualify as a "bad act" under article 37.07, and that by admitting the evidence the trial court would be telling the jury that his actions were a bad act. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § (3)(a)(1); TEX. R. EVID. 403, 404(b). The State responded that the video evidence was pertinent to evidence of his violent history because the video was of Dunn "pointing gun fingers" at the prosecutor which is a threatening gesture and a "bad act."

*See id.* The Court overruled Dunn's objections, and the video was admitted and shown to the jury. Neither the video nor Dunn's threatening acts were mentioned in closing arguments.

To satisfy article 36.02, the State's evidence of Dunn's threats had to meet the following requirements:

(1) materially change the case in the State's favor;

(2) not be cumulative of evidence previously presented; and

(3) must be introduced prior to closing arguments

*See Birkholz*, 278 S.W.3d at 464. We address each article 36.02 factor in turn.

### 1. Materiality

Dunn argues that the video evidence did not address the main issues in the case. In a punishment hearing, article 37.07, § 3(a)(1) allows the trier of fact to consider the defendant's prior criminal record, his reputation and opinions on character, the circumstances of the offense on trial, and other extraneous offense or bad act shown beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 37.07, § (3)(a)(1). The State pointed out that throughout both phases of Dunn's trial, it presented evidence of Dunn's violent history. In response to the evidence, Dunn testified that every violent action he had taken was in self-defense, and any other alleged violent actions were lies created to get him in trouble.

Our sister court has held that the use of "gun fingers" constitutes relevant and legally sufficient evidence of a threat of harm if the cumulative effect of the evidence alludes to a threatening action. *See Barnes v. State,* No. 14-18-00689-CR, ___ S.W.3d.

8

____, 2020 WL 2026033, at *2–4 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, pet. ref'd). Here, given Dunn's long and violent history of using guns in criminal activities and the fact that the trial involved Dunn using a gun and seriously injuring someone by gunshot, evidence that Dunn was making threatening "gun fingers" at the prosecutors during his trial is relevant to whether Dunn is a continuing danger, which was a factor germane to punishment. Thus, because Dunn's actions were current and relevant to his punishment, we agree that the video evidence of Dunn's courtroom threats had the potential to materially change the case in the State's favor in the minds of the jurors.

### 2. Cumulative Evidence

The Texas Court of Criminal Appeals stated that evidence may be admitted under article 36.02, so long as it is not "cumulative of evidence previously presented." *Peek,* 106 S.W.3d at 79. Although the evidence tends to prove the same proposition as that previously introduced, it is not cumulative if it is dissimilar to the evidence used at trial and is additional evidence that bolsters the same point as that introduced at trial. *Banker v. Banker*, 517 S.W.3d 863, 879 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) (discussing *New Amsterdam Cas. Co. v. Jordan*, 359 S.W.2d 864, 867 (Tex. 1962)). "[A] trial court's decision on the admissibility of evidence is not a statement upon the weight of the evidence." *See Garcia v. State*, __S.W.3d __, __, No. 11-18-00357-CR, 2020 WL 6498159, at *2 (Tex. App.—Eastland Nov. 5, 2020, no pet.) (citing *Johnson v. State*, 452 S.W.3d 398, 405 (Tex. App.—Amarillo 2014, pet. ref'd)).

Dunn argues that the video evidence is cumulative because the jury had a first-hand opportunity to observe his conduct and evaluate it. Dunn further argues that by

9

admitting a recording of events that occurred in open court, the trial court was essentially telling the jury that the conduct was relevant to the issue of punishment and that it was a bad act which had the effect of creating unfair prejudice which outweighed any probative value it could have had.

We disagree. The trial court has broad discretion to determine the admissibility of evidence. *Schmidt v. State*, 612 S.W.3d 359, 369 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see* TEX. EVID. R. 104. Here, the trial court did not assert an opinion about the context or significance of the evidence; it simply determined that it was admissible. *See Garcia*, 2020 WL 6498159, at *2.

Further, we conclude that this evidence was not cumulative. This evidence had not been previously presented, and, as the State points out, simply because the events took place in open court does not mean that all, or any, of the members of the jury were able to see Dunn's actions. The evidence serves to prove the former proposition that Dunn is still a threat in society by a new and distinct fact, the evidence had not been previously presented, and the evidence goes toward the issue of Dunn's extraneous bad acts which are admissible during the punishment phase of trial. *See Banker*, 517 S.W.3d at 879; *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

### 3. Introduction Prior to Closing Argument

The State sought to reopen its case under article 36.02 after both sides had rested and a short time after Dunn made the threatening gestures toward the prosecutor. Neither the reading of the court's charge nor closing arguments had begun at the point the State

requested to reopen.

### 4. Summary of Factors

Thus, because the video evidence of Dunn's threatening gestures toward the State was material, not cumulative, and admitted prior to closing argument, the trial court did not err in permitting the State to reopen its case under article 36.02.

## C. Harm Analysis

Even assuming that the trial court erroneously admitted the video, such error did not affect Dunn's substantial rights. *See* TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the record supports that "the error did not influence the jury, or had but a slight effect," then the error is harmless, and the conviction may be affirmed. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). "A harmless error analysis requires consideration of all evidence admitted at trial and the record as a whole." *Birkholz*, 278 S.W.3d at 468–69.

Here, the totality of the evidence in the case overwhelmingly supported the punishment:

- Howard nearly died from his wounds;

- Multiple eyewitnesses described how Dunn shot Howard while Howard was unarmed and not threatening Dunn;

- Dunn had shot three different people (Vincent Morgan, Douglas Gantt, and Howard) over nearly 30 years, including one over a game of dominoes and another over a parking space;

- Dunn's eight previous criminal convictions, including for aggravated assault with a deadly weapon and injury to a child;

11

- Dunn repeatedly lied to the police about what happened; and

- Dunn failed to appear in court and, when found by law enforcement, lied about his identity in an attempt to avoid arrest.

Furthermore, the State's presentation of evidence about Dunn's courtroom threats constitutes approximately three out of nearly five hundred pages of the record. The State did not ask the Court deputy to describe Dunn's actions, no evidence was presented about the impact of Dunn's threats on the prosecutors, and the prosecutors did not reference Dunn's threats during closing arguments. Thus, jurors had ample evidence to impose the maximum possible sentence, independent of the fact that Dunn threatened the prosecutors in the courtroom. *See King*, 953 S.W.2d at 272. In light of the foregoing, we overrule Dunn's first issue.

### III.    MOTION FOR NEW TRIAL

By his second issue, Dunn argues that he is entitled to a new trial based on potential juror misconduct involving juror Terrell and her spouse.

### A.    Standard of Review & Applicable Law

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). We review the record in the light most favorable to the trial court's ruling. *Quinn v. State*, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997).

No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. "When a juror converses with an unauthorized person about the case, 'injury to the

12

accused is presumed' and a new trial may be warranted." *Quinn*, 958 S.W.2d at 401; *Barnett v. State*, 420 S.W.3d 188, 193 (Tex. App.—Amarillo 2013, no pet.).

To establish that an article 36.22 violation has occurred, the defendant has the burden to show that the communication involved matters concerning the specific case at trial. *See Chambliss v. State*, 647 S.W.2d 257, 265–66 (Tex. Crim. App. 1983); *see also Childs-Payton v. State*, No. 07-20-00051-CR, 2021 WL 2006645 at *4–5 (Tex. App.—Amarillo, no pet. h.) (mem. op., not designated for publication.). Even though harm is presumed, "the State may rebut th[e] presumption of harm." *Quinn*, 958 S.W.2d at 401. To rebut, the State must show that "the case was not discussed or that nothing prejudicial to the accused was said," if so, the accused has not been injured, and a new trial should be denied. *Green v. State*, 840 S.W.2d 394, 406 (Tex. Crim. App. 1992).

## B. Analysis

Dunn argues that because Tim was in the courtroom when the jury was dismissed so that counsel could discuss a matter with the judge, and later went to lunch with Terrell, there is a basis to believe the subject of the trial was raised and improperly discussed. The State responds that there is no record of improper communication because Tim testified that his only comment about the trial to Terrell was to say that the case was "interesting." He further testified that he did not hear what was discussed outside the presence of the jury when he remained in the courtroom. Thus, the State was able to effectively rebut the presumption of harm.

Dunn relies upon *Babalola v. State* for the proposition that even though there was no evidence of influence, there was an appearance of improper conduct when the

13

defendant's well-known family members spoke to venire members prior to jury selection. *See*, *e.g.*, *Babalola v. State,* No. 10-09-00234-CR, 2011 WL 1419752 (Tex. App.—Waco April 13, 2011, pet. ref'd) (mem. op., not designated for publication). However, we find *Babalola* inapplicable to this case because: (1) Tim did not have a vested interest in Dunn's case like in *Babalola*, (2) the allegation disregards Tim's testimony, and (3) Babalola's family members were using their status to get friendly with the potential jurors, whereas here, a husband and wife were merely going to lunch and said that the case was "interesting." *See id.* at *3.

Here, there is no evidence that the discussion influenced Terrell's decision regarding the outcome of the case. We overrule Dunn's second issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of July, 2021.