**AFFIRM; Opinion Filed February 28, 2013**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01166-CR

## TRACIE LONEASE RANSOM, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F08-61582-I**

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Francis

A jury convicted Tracie Lonease Ransom of injury to a child, and the trial court sentenced her to five years in prison, probated for five years. In two issues, appellant contends the trial court erred in refusing her request to re-open the evidence and denying her motion for new trial. We affirm.

The jury heard evidence in this case over two days. On the first day, only C.W. and his mother, Rona Taylor, testified. Briefly, their testimony showed that in September 2008, C.W. was five years old and had been having behavioral issues at school. One Friday, he was sent home after having a "major meltdown." Appellant, who is Taylor's cousin, picked C.W. up from school and took him to her house where he stayed overnight. The next morning, Taylor said she

received a call from appellant's mother, Lonease Williams, who told her that another woman, Rebecca "Shun" Edwards, had "whopped" C.W. (Edwards is appellant's sister-in-law.) Taylor went to appellant's house unannounced to check on C.W. Taylor did not see any bruises on him, although she did not check under his clothing, and said he "seemed okay." Taylor left C.W. with appellant until the following Monday, when she took him home. While she was preparing C.W. for his bath, Taylor noticed bruises on his backside. C.W. began to cry and told his mother appellant and Edwards held him down on the bed and "whopped" him with a belt.

C.W. testified appellant and Edwards removed his clothes and had him lay on his stomach on the bed. Then, Edwards held him down while appellant whipped him with a belt and, when appellant tired, she held him down while Edwards whipped him. C.W. said he did not react while they whipped him but said it felt "bad." Photographs of the child's injuries were admitted into evidence.

On the second day of trial, the State called four witnesses, including C.W.'s pediatrician, who saw C.W. on the Tuesday following the Friday incident. Dr. Laura Burgos testified C.W. had a "resolving" bruise that covered his buttocks and upper legs and that C.W.told her "his mom's cousin hit him" while another person held him down, and when she got tired, the other person hit him while his mom's cousin held him down. The State planned to call a fifth witness, but the witness's flight was delayed and the State rested its case.

Appellant, who had subpoenaed witnesses to appear the following day, began his case by recalling Taylor and C.W., who he did not cross-examine the day before. Taylor said that at the time of the incident, C.W. had been having behavior problems at school and had been called in for conferences on a weekly basis. As a consequence for his actions, she took away privileges and sometimes spanked him. C.W. also testified his mother had spanked him for "[b]eing bad at

2

school." He said it had happened a "few times," but she did not "whip" him anymore. He said she had used a switch.

After their testimony, the trial court took a lunch recess. When court resumed outside the jury's presence, the trial judge asked defense counsel if he had more witnesses, and counsel said he had been told they were "on their way." The trial judge asked if he wanted to "rest on this part of the trial then," and defense counsel responded, "As long as I can reopen." The trial judge asked the prosecutor if she would "agree to let them reopen," and the prosecutor said she would.

The jury returned to the courtroom, and the defense rested. The State called two witnesses with Family Protective Services in rebuttal. One testified appellant admitted to him that she had spanked C.W. on the "bottom" with an open hand, and the second testified appellant told her she had "popped" C.W. with a small plastic belt over his clothes. The State again rested, and the trial judge asked the defense if it had any rebuttal witnesses. Defense counsel asked for "a short recess to find out who's in the building."

Thirty minutes later, the parties returned to the courtroom, and defense counsel asked for a continuance "because of our witnesses." The trial judge denied the request. Defense counsel explained the witnesses were "material" and had been subpoenaed for the next morning: "They are people who were in the home at the alleged time of the offense, people from the school, other people who have been mentioned during the term of this trial. And they're not here because things went faster than was anticipated." Defense counsel further stated he reasonably believed it would take the State longer than Monday and Tuesday to present its case, and he "made a reasonable call" in subpoenaing his witnesses for Wednesday. He again asked for a recess and said his witnesses "will be here tomorrow."

3

The trial judge asked if the State had a response, and the prosecutor stated that by that morning, defense counsel should have anticipated his case "would start today." Defense counsel replied his investigator had been "working on it" and he simply did not "have the people here right now." Again, he asked the trial judge to postpone the trial until the next morning, and the trial judge again denied his request. The jury returned to the courtroom, and the trial judge asked if the defense had any witnesses on rebuttal. Defense counsel replied, "Yes, Your Honor. We just spoke with our investigator. Our witnesses are on their way." The trial judge asked if defense had any "right now," and the defense called Edwards.

Edwards, who had also been charged with assaulting C.W., testified she was at appellant's house on the day of the incident. She said C.W.'s shorts were "hanging a little bit" and, as she was tightening his belt, she saw a bruise on his abdominal area. She told appellant, who asked C.W. how he got the bruise, and he said he did not know. Edwards denied she and appellant removed C.W.'s clothes and spanked him. She also denied telling a family protective services investigator she saw appellant use a belt two to three times on C.W. Instead, she said she was entering the restroom, and appellant and C.W. were standing. Both were laughing, and appellant said she "popped him twice."

At the conclusion of Edwards's testimony, the following occurred:

> [TRIAL COURT]: Call your next witness. Defense have any more witnesses?
>
> [DEFENSE COUNSEL]: Your Honor, right now, we're getting ready to —
>
> [TRIAL COURT]: All right. I guess you don't have any more witnesses.
>
> [DEFENSE COUNSEL]: My investigator is just getting ready —

4

[TRIAL COURT]:  If you have a witness, call them now.  I guess you don't.  Okay.  Both sides close?

[PROSECUTOR]:  Yes, Your Honor.

[TRIAL COURT]:  Defense close?  Defense close?

[DEFENSE COUNSEL]:  If I could ask for a minute, please, Your Honor?

[TRIAL COURT]:  All right. We're going to close anyway.  Okay. We're going to go ahead and read the Charge to the jury.

* * *

[TRIAL COURT]:  The Court's Charge to the jury. Members of the jury, the defendant—

[DEFENSE COUNSEL]:  Your Honor — Your Honor, we do have witnesses in the building.

[TRIAL COURT]:  We're reading the Charge.

[Trial Court reads charge]

While the jury was deliberating, defense counsel proffered the testimony of four witnesses:  appellant's two brothers, her sister-in-law, and her husband.  All testified they were at the house on the day of the incident at various times and did not see appellant hit C.W., except for appellant's husband who said appellant told him she "popped" C.W. a couple of times with a "little flimsy belt."  They all said C.W. was playing and acting normal and did not appear to be in any pain.  In addition to these witnesses, defense counsel said he would have called six more witnesses.  Defense counsel explained that three of these witnesses would have testified "about what they saw in the house on that, you know, Friday or Saturday or Sunday or a combination thereof."  Two witnesses were from C.W.'s school—his teacher and principal—and would have testified about C.W.'s behavior and how many times they met with C.W.'s mother.  In addition, the principal would have testified about the school's procedures for having a child picked up and

5

that she made a call to Taylor to pick up C.W. that day. The last witness, who was not subpoenaed, was Lonease Williams, appellant's mother. Defense counsel said Williams would have denied calling Taylor and telling her "[appellant] or Shun had beat the baby and [Taylor] need[ed] to go over there and check it."

After the jury returned its verdict, appellant filed a motion for new trial. At the hearing on the motion, defense counsel presented the testimony of several of the previously mentioned witnesses. After hearing the evidence, the trial court orally denied the motion.

In her first issue, appellant contends the trial court erred in "refusing a timely request to re-open the evidence." In her second issue, she argues the trial court erred in denying her motion for new trial "in which she alleged she had wrongfully been denied the opportunity to re-open the evidence." She argues both issues together.

We begin with the first issue in which appellant argues the trial court refused to allow her to reopen the evidence after she had rested. The record shows that after appellant rested her case and the State presented its rebuttal witnesses, appellant called a witness, Rebecca "Shun" Edwards. After Edwards testified, appellant had no other witnesses present, and the trial court began to charge the jury. So, while appellant complains the trial court did not allow her to reopen the evidence, the record does not support her claim. Rather, it shows that after the trial court allowed appellant to reopen and call Edwards to testify, the court would not delay the trial any longer waiting for the defense to procure its witnesses.

Even if we addressed the issue on the merits, we could not conclude the trial court erred. Article 36.02 of the Texas Code of Criminal Procedure governs a party's right to reopen a case. It provides that the trial court "shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of

6

justice." TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007). "Due administration of justice" means a judge should reopen the case if the evidence would materially change the case in the proponent's favor. *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). To establish a material change, the proponent of the evidence must show the evidence is "more than just relevant—it must actually make a difference in the case." *Id*.

A trial court commits error when it denies a motion to reopen to allow a witness to testify when the following criteria are satisfied: (1) the witness is present and ready to testify; (2) the motion to reopen is made before final arguments and before the charge is read to the jury; (3) the movant states with specificity what testimony the witness is expected to give and the importance the testimony carries; and (4) it is not apparent that the motion's purpose is to frustrate the due administration of justice. *Scott v. State*, 597 S.W.2d 755, 758 (Tex. Crim. App. [Panel Op.] 1979). Among the factors to be considered in determining the materiality of evidence proffered in a request to reopen under article 36.02 are the weight of the evidence, its probative value, the issue upon which it is offered, and whether it is cumulative. *See Peek*, 106 S.W.3d at 78-79; *see also Birkholz v. State*, 278 S.W.3d 463, 464 (Tex. App.—San Antonio 2009, no pet.). We review a trial court's ruling on a motion to reopen for an abuse of discretion. *See Wilkinson v. State*, 423 S.W.2d 311, 313 (Tex. Crim. App. 1968); *Reeves v. State*, 113 S.W.3d 791, 794 (Tex. App.—Dallas 2003, no pet.).

Here, as stated previously, the witnesses were not present and ready to testify when the trial court began reading the charge. Unlike *Scott*, where the witness arrived during the reading of the charge and defense counsel reurged his motion to reopen when the trial court concluded reading the charge, *see* 597 S.W.2d at 756, the record here does not indicate when the witnesses

arrived other than it occurred on the same afternoon.[1] Moreover, prior to the charge being read, defense counsel gave only a brief statement about the evidence. Defense counsel, at the time he sought a continuance, stated the witnesses were "material" and were "people who were in the home at the alleged time of the offense, people from the school, other people who have been mentioned during the term of this trial." Even if this description establishes relevancy, it does not show that the evidence would have made a difference in the case as is required by *Peek*. We are aware appellant made an offer of proof while the jury was deliberating, but the substance of that offer was not before the trial court at the time the decision was made to charge the jury. Given that appellant's witnesses were not present and ready to testify and appellant's failure to inform the trial court of the specific testimony and its importance, we conclude appellant has not shown an abuse of discretion.

Finally, even if we considered the evidence offered while the jury was deliberating, we still could not conclude the evidence would materially change the case in appellant's favor. Appellant's brothers, sister-in-law, and husband would have testified they were at the house on the day C.W. was beaten, none saw appellant hit C.W., and C.W. was acted normally and did not appear to be in pain. These witnesses, however, were either "in and out" or arrived late afternoon or night.[2] More importantly, appellant's husband would also have testified appellant told him she "popped" C.W. a couple of times with a "little flimsy belt." This was in addition to the evidence at trial from the two family protective services workers, who both said appellant told them she hit the child with either her open hand or a belt, as well as Taylor's sister-in-law and appellant's "cousin by marriage," who said she talked to appellant on the day of the incident

---

[1] The jury began deliberating the case at 3:03 p.m., and the bill of exception was made on the same day while the jury was deliberating.

[2] One brother said he was at the house at three different times and was "in and out"; another brother testified he went over to the house that night; the sister-in-law testified she was there from late afternoon to night; and appellant's husband said he was there that night.

and appellant told her she whipped C.W. but he did not cry. As for the school officials, it was not disputed at trial that C.W. had ongoing behavioral issues at school. Any evidence about the school's policies concerning pickup of children could have, at most, marginal relevance and would not be material to the outcome of the case. Finally, evidence by Williams denying she called Taylor Saturday morning and told her "Shun" had beaten C.W. would not have materially changed the case. While it may have tended to impeach Taylor, it did not bear directly on the issue of appellant's guilt or innocence. We overrule the first issue.

With respect to the second issue, we have reviewed the motion for new trial. In the motion, appellant asserted the trial court "refused to permit defense counsel to present nine different witnesses to the jury." She argued she was deprived of her constitutional right to subpoena and present witnesses and that the verdict was prejudiced by the trial court's failure to grant a recess or continuance so that all defense witnesses could be presented. She did not complain the trial court failed to allow her to reopen or mention article 36.02. Under these circumstances, we conclude she has not preserved her complaint. *See* TEX. R. APP. P. 33.1; *see Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) (stating that "trial court cannot be said to have erred in denying a motion for new trial on a basis that was not presented to it"). We overrule the second issue.

We affirm the trial court's judgment

/Molly Francis/
MOLLY FRANCIS
JUSTICE

Do Not Publish
Tex. R. App. P. 47
111166F.U05

9



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

TRACIE LONEASE RANSOM, Appellant

No. 05-11-01166-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F08-61582-I.
Opinion delivered by Justice Francis;
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 28, 2013.

/Molly Francis/

MOLLY FRANCIS
JUSTICE